1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS JEDRZEJCZYK, et al.,

Plaintiffs,

v.

SKILLZ INC., et al.,

Defendants.

Case No. 21-cv-03450-RS

**ORDER GRANTING MOTIONS TO DISMISS**

## I. Introduction

In this putative securities class action, Plaintiffs aver various violations of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Act of 1933 (the "Securities Act") by Skillz, Inc. (a mobile gaming technology company), various corporate officers named as individual defendants, and underwriters. Skillz and the individual defendants brought a motion to dismiss. The underwriters joined in portions of Skillz's motion, and brought a separate motion to dismiss raising additional arguments. For the reasons explained below, both motions are granted. Plaintiffs have failed to plead adequately falsity and scienter as to the Exchange Act claims. Further, Plaintiffs have not established statutory standing as to their Securities Act claims. Even if Plaintiffs had standing to pursue those claims, the Complaint does not adequately plead untrue statements or omissions of material facts.

United States District Court
Northern District of California

## II. Factual and Procedural Background[1]

Skillz is a mobile gaming technology company. Its platform allows users to play "contests" against each other. Two types of contests are available on the Skillz platform: paid contests, in which users pay money for a chance to win cash prizes, and practice contests in which users play for free. Skillz does not develop or distribute games; instead, it offers a set of software tools and programs called a Software Development Kit that game developers can integrate into their own games if they want to use Skillz's competitive gameplay platform. Those third-party games are distributed for free on the Apple App Store and other mobile app stores for use on a user's device. Currently, Skillz exclusively generates revenue by collecting a percentage of the entry fees for paid contests. Skillz shares a portion of the revenue collected from entry fees with the third party game developer.

On December 16, 2020, Skillz went public by merging with Flying Eagle Acquisition Corporation (the "Merger"). On March 18, 2021, Skillz launched a secondary underwritten public offering pursuant to a registration statement on Securities and Exchange Commission ("SEC") Form S-1 (the "March 2021 Offering"). After Skillz went public, the company experienced various fluctuations in stock price.

On May 7, 2021, Plaintiff Thomas Jedrzejczyk filed an action in this Court. On June 17, 2021, other plaintiffs filed a substantially similar lawsuit, *Schultz v. Skillz Inc. f/k/a Flying Eagle Acquisition Corp.., et al.*, Case No. 3:21-cv-04662. On July 14, 2021, the two cases were related by court order and then were consolidated on August 9, 2021.

On October 8, 2021, Plaintiffs filed a Consolidated Class Action Complaint (the "Complaint"). Plaintiffs name four categories of defendants: (1) the Company Defendant, Skillz; (2) the Officer Defendants,[2] who all served or currently serve as officers of Skillz; (3) the Director

---

[1] As facts in a complaint are taken as true when evaluating a Rule 12(b)(6) motion to dismiss, *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005), the facts recited in this background section are from the Complaint unless otherwise noted.

[2] Officer Defendants are Andrew Paradise, Scott Henry, Casey Chafkin, and Miriam Aguirre.

United States District Court
Northern District of California

Defendants,[3] who all served or currently serve on Skillz's Board of Directors; and (4) the Underwriter Defendants,[4] who served as underwriters for the March 2021 Offering. The Officer Defendants and Director Defendants are also collectively referred to as the Individual Defendants. Plaintiffs bring this action on behalf of persons who purchased or otherwise acquired Skillz common stock between December 16, 2020 and May 4, 2021 (the "Putative Class Period") and all persons who purchased Skillz's common stock in the March 2021 Offering. Among other averments, Plaintiffs state that "Defendants disseminated false and misleading statements and omissions that materially misrepresented Skillz's purported financial condition and prospects and concealed and obscured material facts" during the Putative Class Period. Complaint ¶ 6.

Plaintiffs plead five counts in their Complaint. In Count One, Plaintiffs aver violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the Company and Officer Defendants. In Count Two, Plaintiffs aver violations of Section 20(a) of the Exchange Act by the Officer Defendants. Count Three avers violations of Section 11 of the Securities Act against all Defendants, except Aguirre. Count Four avers a violation of Section 12(a)(2) of the Securities Act by Skillz and the Underwriter Defendants. Count Five avers violations of Section 15 of the Securities Act by the Individual Defendants.

Plaintiffs aver seven types of misleading statements or omissions: (1) there were declining play and downloads in top games despite statements indicating growth, Complaint ¶¶ 108-118; (2) the planned expansion into India was years away from completion, rather than imminent, *id.* at ¶¶ 119-124; (3) overstatement of Skillz's technical capabilities in terms of synchronous play, as the capability was only in a testing phase, *id.* at ¶¶ 125-129; (4) across the board growth and engagement of its userbase, when in reality Skillz made most of its money from a very small

---

[3] The Director Defendants are Harry Sloan, Jerry Bruckheimer, Christopher Gaffney, Vandana Mehta-Krantz, and Kent Wakeford.

[4] The Underwriter Defendants are Citigroup Global Markets, Inc., Goldman Sachs & Co. LLC, Jefferies LLC, RBC Capital Markets, LLC, UBS Securities LLC, Wedbush Securities Inc., Wells Fargo Securities, LLC, Canaccord Genuity LLC, and Stifel, Nicolaus & Company, Incorporated.

ORDER GRANTING MOTIONS TO DISMISS
CASE NO. 21-cv-03450-RS

proportion of users, *id.* at ¶¶ 130-34; (5) use of misleading metrics by attributing revenue growth to higher monthly average users ("MAU") rather than disclosing average revenue per paying user, *id.* at ¶¶ 135-51; (6) violation of SEC disclosure rules by not identifying paying MAUs as the primary driver of revenues in Defendants' financial statements, *id.* at ¶¶ 152-56; and (7) materially understating Skillz's liabilities in its 2020 financial statements due to its classification of SPAC warrants as assets, rather than liabilities, and misrepresenting that its internal disclosure controls were adequate, *id.* at ¶¶ 157-64.

Some of these alleged misstatements or omissions relate only to the Exchange Act claims or only the Securities Act claims. Table 1 shows which misstatements/omissions relate to which claims.

**Table 1: Types of Misstatements/Omissions and Inclusion in Claims**

|  | Exchange Act | Securities Act |
|---|---|---|
| (1) Declining Downloads | X |  |
| (2) Expansion to India | X |  |
| (3) Synchronous Gameplay | X | X |
| (4) Userbase engagement/growth | X | X |
| (5) Metrics | X |  |
| (6) Violating SEC disclosure rules by failing to disclose driver of revenue |  | X |
| (7) Improper accounting for SPAC warrants |  | X |

Skillz along with the Officer Defendants and Director Defendants move to dismiss all of the claims. The Underwriter Defendants move to dismiss Counts Three and Four, the only two counts in which the Underwriter Defendants are named. The two motions are addressed together, unless otherwise specified in this Order.

### III. Judicial Notice

#### A. Standard

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, "[t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of

1    Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also*

2    *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting documents

3    incorporated by reference and "matters of which a court may take judicial notice" are properly

4    considered when ruling on a motion to dismiss).

5           "Incorporation-by-reference is a judicially created doctrine that treats certain documents as

6    though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. A defendant may seek to

7    incorporate a document into the complaint "if the plaintiff refers extensively to the document or

8    the document forms the basis of the plaintiff's claim." *Ritchie*, 342 F.3d at 907 (emphasis added).

9    "The doctrine prevents plaintiffs from selecting only portions of documents that support their

10   claims, while omitting portions of those very documents that weaken—or doom—their claims."

11   *Khoja*, 899 F.3d at 1002. In general, "a court may assume an incorporated document's contents are

12   true for purposes of a motion to dismiss under Rule 12(b)(6) . . . [but] it is improper to assume the

13   truth of an incorporated document if such assumptions only serve to dispute facts stated in a

14   wellpleaded complaint." *Id.* at 1003 (internal quotations and citations omitted).

15          "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not

16   subject to reasonable dispute.'" *Id.* at 999 (citing Fed. R. Evid. 201(b)). "A fact is 'not subject to

17   reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from

18   sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-

19   (2)). "Accordingly, a court may take judicial notice of matters of public record without converting

20   a motion to dismiss into a motion for summary judgment . . . [b]ut a court cannot take judicial

21   notice of disputed facts contained in such public records." *Id.* (internal quotations and citation

22   omitted). If either party requests judicial notice and "supplie[s] the necessary information[,]"

23   judicial notice "must" be taken. Fed. R. Evid. 201(c)(2).

24          **B. Discussion**

25          Defendants argue that Plaintiffs explicitly reference in the Complaint a variety of

26   documents—such as SEC filings, publicly available short seller reports, and documents on the

27   company's website—and thus those documents are incorporated by reference in the Complaint.

28

United States District Court
Northern District of California

1    Defendants also request that the Court take judicial notice of those publicly available documents.

2    Plaintiffs challenge Defendants' request as to two types of documents: a post-class period press

3    release from Skillz (Exhibit G to Skillz Defendants' Request for Judicial Notice) and two news

4    articles (Exhibits 4 and 5 to the Underwriter Defendants' Request for Judicial Notice). As for the

5    post-class period press release, this document is irrelevant because it is outside of the class period,

6    and thus is not subject to judicial notice. *See Park v. GoPro, Inc.*, No. 18-cv-00193-EMC, 2019

7    WL 1231175, at *7 (N.D. Cal. Mar. 15, 2019).

8          The articles, in contrast, are subject to judicial notice, but only for a limited purpose. "Just

9    because [a] document itself is susceptible to judicial notice does not mean that every assertion of

10   fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999. Thus

11   "judicial notice of these documents" will be taken "not for the truth of the matter asserted, but 'for

12   the purpose of showing that particular information was available to the stock market.'" *In re Apple

13   Inc. Sec. Litig.*, No. 19-cv-02033, 2020 WL 2857397, at *6 (N.D. Cal. June 2, 2020) (quoting

14   *Helitrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999)).

15   **IV. Legal Standard**

16         A complaint must contain "a short and plain statement of the claim showing that the

17   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not

18   required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its

19   face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

20   544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court

21   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

22         A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil

23   Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus.

24   v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based

25   either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged

26   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

27   1988). When evaluating such a motion, the court must accept all material allegations in the

28

United States District Court
Northern District of California

complaint as true, even if doubtful, and construe them in the light most favorable to the non-movant. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 556 U.S. at 678.

Complaints in securities cases must also meet the pleading standards set forth by the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA mandates that "securities fraud complaints 'specify' each misleading statement; that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed'; and that they 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (alterations in original) (quoting 15 U.S.C. §§ 78u–4(b)(1)–(2)). Furthermore, securities claims which are "grounded in fraud" must meet the pleading requirements of Rule 9(b). *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotations and citations omitted).

## V. Exchange Act Claims

Plaintiffs aver a violation of Section 10(b) of the Exchange Act and a derivative claim under Section 20(a). Section 10(b) of the Exchange Act makes it unlawful for "any person ... [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Pursuant to Section 10(b), the SEC has promulgated Rule 10b–5, which provides, inter alia, that "[i]t shall be unlawful for any person . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(c).

To establish a violation of Rule 10b–5, a plaintiff must demonstrate "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Systems, Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). To survive a motion to dismiss, "a complaint stating claims under Section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA." *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Defendants argue Plaintiffs have failed to plead falsity, scienter or loss causation. Each of these arguments is addressed in turn.

### A. Falsity

Plaintiffs plead five types of alleged misstatements or omissions to underlie their Exchange Act claims: (1) failure to disclose declining game downloads; (2) statements about launching in India; (3) statements about synchronous gameplay; (4) statements about userbase engagement and growth; and (5) metrics about decline in revenue per paying user. To allege falsity under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . .  state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting 15 U.S.C. § 78u–4(b)(1)) (quotation marks omitted). A statement is misleading "if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

Although each type of alleged misstatement or omission varies in strength, falsity is not pled as to any of them. On the weakest end is the failure to disclose declining game downloads. Plaintiffs argue that "[o]nce Defendants chose to speak about the continuing growth of top games they were obligated to disclose the decline of its top three games, which were 'shrinking,' contrary to Defendants' representations." Opposition to Skillz Motion to Dismiss, p.13. The challenged statements indicate that Defendants revealed which game held the most downloads rotated over

time, and implied that even games that were no longer the most popular were still gaining

downloads. *See* Complaint ¶ 109 ("Even though the top title continues to rotate over time, they're

not shrinking or disappearing. In fact, they continue to grow, often quite substantially, after being

displaced from the number one position." (quoting investor call)). This is not inconsistent with the

"revelation" that the top three games were decreasing in download rates: in the face of a decrease,

the title is still gaining downloads. Indeed, it could mean that a title continues to grow at a

substantial rate, if its original download rate was especially high.

Statements about launching in India are similarly weak because they are unactionable

forward-looking statements. Statements that the company was expected to or was on track to

launch in India in 2021 "are merely alternative ways of declaring or reaffirming the objective

itself." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). These kinds of statements are

protected by the PSLRA's safe harbor. *Id.* For a representation that a plan is "on track" to be

actionable, at a minimum it must be tethered to an explanation of what the "track" consisted of in

the first instance.

Next, as for alleged misstatements about userbase engagement or growth, statements such

as touting a "stickier, more engaging, and continuously improving" user experience and a "vibrant

and growing ecosystem" are non-actionable puffery. *See Police Ret. Sys. of St. Louis v. Intuitive

Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("Statements of mere corporate puffery, vague

statements of optimism like 'good,' 'well-regarded,' or other feel good monikers are not

actionable because professional investors, and most amateur investors as well, know how to

devalue the optimism of corporate executives.")

Statements about synchronous gameplay come closer to meeting the bar for falsity.

Plaintiffs plead that Skillz stated in its Merger Proxy Statement that it "offer[s] a wide range of

contests for the users" and "enable[s] game genres that can be played . . . synchronously."

Complaint ¶ 126-27. The statement further elaborated that "[a]n example of a synchronous game

would be a real-time strategy game where users are making multiple moves simultaneously and

then the winner is determined when the game ends." *Id.* Skillz, however, does not create

synchronous games itself, and instead offers a platform upon which developers may create games with synchronous gameplay. The challenged statement therefore concerns capability, not availability. As a reasonable investor would know Skillz is not a game developer and that a statement about what is enabled on the platform is not equivalent to what games are made available using the platform, there is an inadequate showing that a reasonable investor would have been misled.

Finally, as to metrics about a decline in revenue per user, Plaintiffs have not adequately alleged falsity as to this category of misstatements and omissions. Defendants were not required to disclose all possible metrics; instead, the SEC requires disclosure of "known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 n.8 (9th Cir. 2014) (quoting 17 C.F.R. § 229.303(a)(3)(ii)). Plaintiffs have not adequately alleged that the failure to report certain metrics, or a switch in what metrics were reported, rise to the level of falsity.[5]

### B. Scienter

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *See Tellabs*, 551 U.S. at 319 (internal quotation marks and citation omitted). "[T]he complaint must allege that the defendants made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Systems*, 411 F.3d at 1015. To plead scienter adequately under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A); *see also Zucco Partners,* 552 F.3d at 991. To qualify as a "strong inference," the Supreme Court has held, "an inference of scienter must be more than merely plausible or reasonable[.]" *Tellabs*, 551 U.S. at 314. When determining whether there are sufficient allegations of scienter, courts

---

[5] Further, the statements Plaintiffs cite in which Defendants tout the importance of an increase in MAUs include in the same sentence a focus on developing new paid users. *See, e.g.*, Complaint ¶¶ 137-38.

"must consider the complaint in its entirety" and inquire "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23 (emphasis in original). Moreover, courts must take into account plausible opposing inferences. *Id.* at 323. A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. "Falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts[.]." *In re Daou Systems*, 411 F.3d at 1015 (internal quotation marks and citation omitted). The existence of a motive is relevant, but not dispositive, to establishing scienter. *See Matrixx Initiatives*, *Inc. v. Siracusano*, 563 U.S. 27, 48 (2011).

Even if Plaintiffs had adequately pled falsity, they would still have scienter problems. Taking the strongest of Plaintiffs' alleged misstatements and omissions—the availability of synchronous gameplay—scienter would fail even if falsity were adequately alleged. Even if the statements would have been interpreted by a reasonable investor to mean that synchronous gameplay was available, the statements are indeed subject to a contrary interpretation: that Skillz merely offers the feature, not that any games are actively employing the feature in fully-tested games. At worst, the statements appear to be poorly worded explanations of what games Skillz offered, rather than a statement made with "a mental state embracing intent to deceive, manipulate, or defraud." *See Tellabs*, 551 U.S. at 319.

### C. Loss Causation

Loss causation is "a causal connection between the material misrepresentation and the loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). A plaintiff may plead loss causation by identifying a "corrective disclosure," in which the "practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).

Although it is not necessary to discuss loss causation in full due to the Complaint's failures in terms of falsity and scienter, Plaintiffs will face challenges in establishing loss causation due to

their reliance on short seller reports. While courts have not categorically forbid the use of short seller reports as corrective disclosures, *see In re QuantumScape Sec. Class Action Litig.*, No. 3:21-CV-00058-WHO, 2022 WL 137729, at *18 (N.D. Cal. Jan. 14, 2022) (finding that plaintiff adequately alleged a corrective disclosure based in part on a short seller report), numerous courts have noted concerns with relying on reports written by entities with serious financial incentives to damage a company's stock price. *See, e.g. Mulquin v. Nektar Therapeutics*, 510 F.Supp.3d 854, 873 (N.D. Cal. 2020) (explaining that because a short seller "had a financial interest in driving [] stock price down and [] disclaimed any 'representation, express or implied, as to the accuracy, timeliness, or completeness of any such information or with regard to the results obtained from its use[,]' the market would not have reasonably perceived the short report as revealing the falsity of challenged statements").

Finally, the shortcomings in pleading the elements of the Section 10(b) claim means the derivative claim under Section 20(a) of the Exchange Act fails as well, because there is no underlying violation of the Exchange Act. *See Rigel*, 697 F.3d at 886. In short, the motion to dismiss is granted as to the claims under Sections 10(b) and 20(a) of the Exchange Act.

## VI. Securities Act Claims

### A. Legal Background

As noted, plaintiffs assert claims under Sections 11 and 12(a)(2) of the Securities Act, as well as a derivative claim under Section 15. To state a claim under Section 11, a plaintiff must allege plausibly that a registration statement "contained an untrue statement of material fact" or "omitted to state a material fact . . . necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). An "untrue statement of material fact" must be both (1) false and (2) material to investors. *See Rigel Pharm.*, 697 F.3d at 880 n.8. Not all relevant or material omitted facts are actionable omissions. *Id.* (citing *Matrixx Initiatives*, 563 U.S. at 38); *Brody*, 280 F.3d at 1006. Rather, to be actionable an omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists" to be actionable. *Brody*, 280 F.3d at 1006. Section 11 imposes strict liability. *In re Daou Sys.*, 411 F.3d at 1028.

Section 12(a)(2) applies the same standard. *See* 15 U.S.C. § 77l (imposing liability where a prospectus or communication "includes an untrue statement of a material fact" or "omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading"). It creates said liability for any person who offers or sells a security through a prospectus or an oral communication creating a material misstatement or omission. Section 15 creates liability for anyone who "controls" a defendant who is liable under Section 11 or 12(a)(2).

### B. Discussion

As a threshold matter, Defendants argue that the one named Plaintiff bringing Securities Act claims, Kenny Tinkelman, lacks statutory standing to bring claims under Section 11 or 12(a)(2) because he has failed to trace his shares to the secondary offering. Statutory standing for a Section 11 claim requires that a plaintiff "must either have 'purchased shares in the offering made under the misleading registration statement,' or purchased shares in the aftermarket 'provided they can trace their shares back to the relevant offering.'" *Pirani v. Slack Techs., Inc.*, 445 F.Supp.3d 367, 378 (N.D. Cal. 2020) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013)). Tinkelman does not allege direct purchases from the secondary offering, and thus meeting this requirement is more challenging when "there are multiple registration statements, in which case the plaintiff must prove that the purchased shares were issued under the allegedly false or misleading one, 'rather than some other registration statement.'" *Id.*

Defendants argue that this Court should follow another court in this district, which held that a plaintiff's allegation that "they purchased their shares on the day of the [secondary offering] and for the same offering price" is insufficient to establish statutory standing. *Thomas v. Magnachip Semiconductor Corp.*, 167 F.Supp.3d 1029, 1055 (N.D. Cal. 2016). Plaintiffs argue that *Magnachip* misread *In re Century*. Although *Magnachip* stated that the pleadings at issue were the "same allegations [] rejected by the Ninth Circuit in *In re Century*[,]" *id.* at 1055, Plaintiffs are correct that *In re Century* did not involve shares purchased on the offering date for the offering price. The reasoning in *Magnachip*, however, is persuasive. Given the volume of other

shares on the market from the prior offering, even alleging that someone bought shares on the day

of the March 2021 Offering at the offering price is inadequate to establish statutory standing at

this stage, due to a significant possibility that the shares purchased originated from the prior

offering but were being traded at the secondary offering price.[6] *See id.* at 1055 (explaining that

although "the plaintiffs' shares 'could have come from the secondary offering, [] the obvious

alternative explanation is that they could instead have come from the pool of previously issued

shares'" (quoting *In re Century*, 729 F.3d at 1108)).

Plaintiffs also lack statutory standing for the Section 12(a)(2) claim. Liability under

Section 12(a)(2) is "limited to public offerings." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 578

(1995). As another court in this district has concluded, "based on *Gustafson*, § 12(a)(2) does not

extend to after market transactions." *In re Levi Strauss & Co. Sec. Litig.*, 527 F. Supp. 2d 965, 983

(N.D. Cal. 2007). Plaintiffs do not allege that they purchased directly in the secondary offering;

instead they argue that Tinkelman purchased shares traceable to the secondary offering.

Even if Plaintiffs had standing to pursue their Securities Act claims, the Complaint does

not adequately plead untrue statements or omissions of material facts. None of the statements pled

by Plaintiffs "create[d] an impression of a state of affairs that differs in a material way from the

one that actually exists." *Brody*, 280 F.3d at 1006. First, as to statements and omissions that were

addressed in the discussion of the Exchange Act claims—concerning synchronous gameplay and

userbase engagement/growth—those statements fail for the same reasons as discussed above.

Next, Plaintiffs have not adequately alleged false statements or omissions as to the alleged

misclassification of warrants as equity instead of liabilities in the 2020 financial statements

included in the March 2021 offering documents. Defendants contend that a change in SEC

guidance prompted the change in warrant classification just two months after the March 2021

---

[6] To the extent that Plainitiffs allege Jedrejczyk purchased shares in the secondary offering, he is not included in the relevant counts, and the description of his purchase of shares does not seek to allege that he purchased shares traceable to the March 2021 offering. *See* Complaint ¶ 29 ("Lead Plaintiff Thomas Jedrzejczyk purchased the Company's securities at artificially inflated prices during the Class Period[.]").

United States District Court
Northern District of California

Offering. Defendants argue that whether to classify warrants as equity or liability was a matter of opinion, and opinion statements in the form of good-faith accounting decisions are immune from suit, citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613-14 (9th Cir. 2017), and two district court cases. As currently pled, the prior classification of warrants as equity appears to be a good faith accounting decision, and thus this type of alleged misstatement is not actionable.

Finally, Plaintiffs have not alleged a material misstatement or omission as to the classification of revenue on its platform. Plaintiffs allege that inclusion of "Bonus Cash," an incentive given to users which essentially gives them the equivalent of a gift card in funds to play with, in the "revenue" category of financial statements, was misleading. The "Bonus Cash" was accounted for, however, via either an entry for "reduction in revenue" or "sales and marketing expense," and thus was accounted for in the financial statements. Further, Defendants included an explanation of the accounting for Bonus Cash in the notes to the financial documents.

In short, Plaintiffs lack statutory standing to pursue their Section 11 and Section 12(a)(2) claims.[7] Even if they did have standing, they have not adequately pled untrue statements or omissions of material facts. As Plaintiffs have not adequately alleged a primary violation of the Securities Act, they have not alleged a violation of their Section 15 derivative claim either. *See Rigel*, 697 F.3d at 886.

### VII. Conclusion

For all the foregoing reasons, the Skillz Defendants' motion to dismiss and the Underwriter Defendants' motion to dismiss are both granted in full. Plaintiffs are granted leave to amend. Any amended complaint must be filed within 30 days of this Order.

**IT IS SO ORDERED**.

---

[7] The parties dispute whether the heightened pleading standards of Rule 9(b) apply to the Securities Act claims. Whether applying the *Twombly/Iqbal* standard or the heightened Rule 9(b) standard, the result is the same.

United States District Court
Northern District of California

1

2    Dated: July 5, 2022

3    _____

4    RICHARD SEEBORG
     Chief United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28